Good afternoon, Your Honors. Michael Spencer for the Plaintiff's Appellants in this case. It is my aspiration to reserve five minutes for rebuttal. Your Honors, this is a securities fraud class action. It involves the sales of variable annuities, which are a very popular investment product. Counsel, I wonder if we need to get to any of the securities aspects. I was going to end my sentence with that, Your Honor. It's also a tax offer. It looks to me as though the question is whether the plaintiffs blew off the witness list exchange date and are entitled to call witnesses anyway. Yes, Your Honor. There's actually two sanctions issues on appeal. One of them involves the scheduling order, which you just mentioned, and the other, which we have brought up, is whether the defendant's destruction of e-mails warranted a sanction by Judge Browning. But let me start with the one On the witness list. Let's see. Did the judge say you can't call any witnesses or just you can't call any witnesses beyond what the defendant listed or what? The judge said, Your Honor, that we could not use any experts, call any experts, or call any witnesses at all, period, at the end. So this was truly a case terminating sanction without any shadow of a doubt. Was that consistent with what Rule 37 says? No, Your Honor, it was not, and certainly not consistent with what the case law provides that sanctions should conform to in situations in which the sanction is going to terminate the case for the litigant. And as we've argued in the briefs, Your Honor, the standard that applies for a case terminating sanction here is that the party on the receiving end of the sanction has to be found to have acted willfully or at fault or in bad faith. Now, that standard Yes. Counsel, can I ask a question? Did it terminate the case for the individual plaintiffs? It turned out that the judge decided, much at our urging also, Your Honor, that not only the class aspects of the case, but the individual claims were terminated also. If we could not call any witnesses, if we could not call experts to explain how the damages were caused even to the named plaintiffs, we didn't have a case left even for them. And therefore, their case was dismissed as well. I don't get why you didn't submit a witness list on the date witnesses' witness lists were due, listing your experts. I didn't see it showing a good cause. Well, Your Honor, we did submit our expert designations and their reports on the date that according to our reading of the extension order, the extension for the scheduling. Not my reading of it. I don't understand why you didn't. I mean, most people know in litigation, it takes a long time to set up and perform the depositions of experts. You have to get dates when everybody can be available, including the expert. And an extension of discovery is just typically so you've got more time to arrange the depositions and the paper discovery after you know who the witnesses are. I didn't see any good cause shown. I saw your explanation of good cause for why your side did not understand the discovery order. But I did not see a showing of good cause for why you didn't just exchange the names of your witnesses on the date. We did, Your Honor. I think there's a miscommunication here. I mean, you did on the date the court ordered you to do it or on the date you assumed was correct? Well, that's the question. Which is it? Not the answer. The court order was a he signed a stipulation that the parties prepared. Well, regardless of that, could you just answer the question? When you say you did it, all I'm asking you to tell me is that you did it before the court ordered or what you interpreted the court, you thought the court ordered. Well, we did it according to our interpretation of what the court ordered by signing the stipulation. Yeah. It turned out the judge had a different view. It did turn out that way, Your Honor, in August. And from the telephone conference that the parties all had, you must have been Your Honor, we knew that there were two interpretations of the scheduling order at that time. Yeah. One of them was ours and one of them was the defendant's. Right. Now, I would like to talk to you about that interpretation. To me, it looks like two interpretations of the part of the Constitution that says there shall be one Supreme Court. It may mean only one. It may mean one or more or at least one. Well, Your Honor, what the extension order said that we're talking about is the discovery cutoff for fact witnesses is advanced to a particular date from the end of 2003 until February 13, 2004. Read the words. I mean, the words of the order. I have them in my notes, Your Honor. The discovery cutoff is extended to February 13, 2004. Discovery cutoff. Yes, and that referred to facts discovery, depositions of facts. And it went on to say the time periods for the remaining provisions of the court's prior scheduling order shall remain the same. Right. So the question here, Your Honor, is what does the term time periods mean? If it had said the dates in the prior order remain the same, there would have been no ambiguity. Now, this was a stipulated order. It was a stipulated order. Between the parties. Yes, Your Honor. Which could have been made as clear as you wanted to make it. It could have been made clearer than this. I have to agree with that, Your Honor. So what you're saying now is the judge should be reversed because he has interpreted that ambiguous order different from the way you. No. That is not our position, Your Honor. We respect Judge Browning's ultimate decision as to how he thought the scheduling order should be interpreted. We didn't agree with it, but we respect what he turned up with. Our point, Your Honor, is that our interpretation of the scheduling order, which we adhered to between January when the stipulation was signed and August when Judge Browning issued his decision, which told us we were wrong, was not done with the kind of willful bad faith that warrants dismissal of the case. I don't have an excuse yet for why you didn't give me your witness list. I mean, everybody who litigates knows, all of us who have litigated know, there's a huge advantage if one side goes first instead of it being simultaneous. It's like playing poker, and the other side has to show you their hand, and then you decide whether to bet or fold. Well, Your Honor, in this situation, our experts had been disclosed to the other side because they had brought summary judgment motions, and we had given them. But they don't know who you're going to call, so they've got to stick their neck out on who they may use before you do. Well, Your Honor, when they came up with their interpretation of the scheduling order, which had earlier dates in it than ours because they interpreted time periods to mean specific dates rather than moving the whole thing out in an orderly fashion, which was our interpretation, we gave them our expert designations and the reports at the time that they were due under the interpretation that we had. Was there some reason you could not have given them your expert list on the date the expert list were due? Well, Your Honor, we didn't think that that was the date. There was no clue to us that January 27th, 2004, which is their interpretation of what the date is, which was the exact date from the prior schedule, remains the date. I thought it was the words written in the stipulated scheduling order. The extension said the time period for the remaining provisions of the court's order shall remain the same. Now, normally, Your Honor, I litigate a lot, Your Honor, and whenever there is an extension of discovery, there is a corresponding extension of all of the other dates that hang off of it. Well, why didn't you just put that in there if there was going to be a corollary? You know, Your Honor, unfortunately, we thought we had by saying all of the other time periods remain the same. In other words, there was a time period from when the discovery cutoff was until when the expert reports went in. It was 27 days in the old scheduling order. We thought that that 27 days was just moved forward. That's a very strange way of putting it, if that's what you meant. Well, Your Honor, I wish to heavens right now that we had written it differently. But what I'm telling you is that putting the interpretation aside, that we were not acting in that way. Putting that interpretation aside, once you found out that the other side interpreted it differently, why couldn't you then just comply and give them what you had at that point? Why wait until August to do it? We did not wait until August, Your Honor. When did you actually turn over the information? March 8th. And when we heard, the first time that we heard or saw, actually, that the defendants had a contrary interpretation was when they submitted a motion to stay discovery. What date was that? As of January 27th, at least you knew, right? No, ma'am. You didn't? No. We had no idea. The first time that this was known to us was in the document that appears starting on page 248 of the excerpts of record. What date was that? February 17th, 2004. It's beyond dispute, Your Honor, that the fact discovery ended, both sides agree on this, three days earlier, on February 13th. Nevertheless, the defendants put in a motion to stay discovery four days later. Now, that doesn't make any sense, does it? If there was a discovery cutoff on February 13th, why on earth would the defendants put in a motion to stay discovery, a memorandum of points and authorities in support? The reason is, Your Honor, that both sides knew that the discovery schedule was in shambles. Counsel, I don't know about shambles. I mean, it's not as though none of us have ever heard of litigation. Right. But discovery has different phases. First, you do some discovery on your own without the other side looking over your shoulder. You maybe consult with experts privately and secretly. At some point, you exchange witness lists, and then each side does depositions and paper discovery relating to the other side's witnesses. No, not in the District of Arizona, Your Honor. The witness lists, the witnesses whom you're going to call at trial, that occurs much later in the process. It occurs after discovery is done. You don't do an exchange of lists of witnesses whom you may call at trial before the conclusion of discovery? The only thing that you do in that respect, Your Honor, is the Rule 26 initial disclosures of people who may have knowledge about the subject matter. You don't disclose probable witness lists, lists of probable witnesses until the point of discovery. The way I've always seen it done in Federal and State court is you have an exchange of witnesses whom you may call, and then you don't have to call them all, but you can't call anyone that you didn't have on your list. Your Honor, I would urge you to look. That's not how it works there? No. If you look at Judge Browning's initial scheduling order here, you'll see that the occurs much later in the process. And if you'd like, I'll take a moment. The initial scheduling order starts on page 83 of the excerpts of record, and the witness lists do not occur until much later. Now, what the District of Arizona says is that during discovery you're going to call, and the way I'd always seen it done, and my experience, I have none in Arizona, was your witness lists channel the discovery at that point by confining whom you can call, and then there's a pretrial conference about one to two weeks before trial, typically, where people go through who they're actually going to  trial. When I hear the term witness list, to me it means parties, witnesses you are likely to call at trial. As far as the discovery process, Your Honor, neither side here gave the other side a list of people who might be subject to discovery. We were on our own to find out through discovery whom to depose, and that, in my experience. That they did do. I mentioned that before, Your Honor. Actually, I'm not sure whether they did that here or not. Yes. But, of course, in a situation like this, the plaintiff doesn't know much about the people inside the companies. But, Your Honor, I'm afraid that what is being lost here is the fact that I don't think has any credible disagreement in the record, that there is no finding and no reason that we on the plaintiff's side could, should or would have acted in bad faith here. We had our experts, they had put in affidavits in opposition to summary judgment in the prior month. If we had thought that January 26th was the date that the expert reports ought to be put in, unlike in many other cases in this one, it would have been easy for us to do so. Let me see if I understand. You're asking us to reverse the district court judge's sanctions. Dismissing the case, yes. And you're going to do this on the basis that to demonstrate his abuse of discretion for him to enter the sanctions, and the reasoning is that there was a misunderstanding as to when these documents should have been filed. Yes, and there's one more part to that. Which is? Which is that under the law, the sanction that Judge Browning entered, which terminated the case, is only proper in his discretion upon a finding that the plaintiffs in this case acted in bad faith or willfully. That is the law. You do not terminate a case as a sanction for a discovery abuse unless those conditions are present. How would you distinguish Yeti? In Yeti, Your Honor, there were all sorts of those kinds of willful bad faith that the court found existed. Extremely so. And in this case, Your Honor, I know because I was there, it was at most an honest mistake over the interpretation of those words. Let me ask you that under Rule 37, in order to get 37 penalties, a party that is without substantial justification or where the failure is harmless, that there's no problem. Now, you've never raised those issues, so I take it you're relying completely on the misunderstanding. No, we have raised all of those issues on this appeal, Your Honor. On appeal, but in the district court, you did not argue either that this was without or you did not argue there was substantial justification. You didn't argue that it was harmless. Here's what happened, Your Honor. Is that a yes or a no? We argued it on reconsideration, Your Honor. Judge Browning entered the sanction in August without making any findings, including of bad faith or willfulness or fault. He simply entered an order one day finding that our expert report had been submitted untimely and dismissing the case, dismissing the class aspects of the case. He didn't ask for briefing on discovery sanctions. There was no motion by the defendants here for imposition of a sanction. I understand that. But it's the burden of proof of the individual who's being sanctioned to come forth with at least an argument, if not evidence, that there's substantial justification or that it's harmless. That was your burden. Your Honor. And you say we didn't have any findings. Did you ask for findings to be made? Yes, Your Honor. We made a motion for reconsideration. Did you ask for findings to be made? Yes, Your Honor. In that motion, we told Judge Browning that there were none of these things present and that he should not do it. And you asked specifically to have him make certain specific findings. I'm sorry, Your Honor. I don't remember if we specifically asked for findings. He might advise us later where the motion is, because I miss that, if it's there, that you actually raised those two issues and did not ask, and I didn't see where you'd ask for the specific findings. But if you can show me that. I will, Your Honor. And let me please make the point with respect to sanctions that the defendants here did not make even a motion for discovery sanctions. Judge Browning did this of his own accord in the middle of August as a way of getting rid of the case that did not have an antecedent of a discovery sanction motion. Counsel? I keep getting confused about something. I want to give you one more chance to educate me out of my confusion. The scheduling order, the initial scheduling order, said discovery on the merits completed December 30, discovery related to expert testimony completed April 19. Disclose the names of all witnesses April 19. Designate experts, though, the previous January, January of 2004. Now, when I look at that, it looks awkward to me, because you get information you need to do depositions after you're no longer allowed to take them. But then it looks like the parties mutually agreed on a repair that would solve the problem. The discovery cutoffs extended to February 13, but all other deadlines remain the same. All other deadlines remain the same? No, Your Honor, that's not what it says. Time periods, that's what you're focusing on. Time periods, not deadlines. The time periods, you're right, shall remain the same. And that's a big difference, Your Honor. At least it was to us, in good faith. And, Your Honor, what you're, I think, getting at is, under their interpretation So you're saying a time period doesn't include a particular date of exchange of witness A time period is just It slides over. Exactly. That's what we're saying. And we put an affidavit from, when this was on reconsideration to Judge Browning, we put an affidavit, Your Honor, in from a local practitioner in Tucson, who said that the local practice there always has expert disclosure done after the close of fact discovery, because you want to know what all the fact witnesses say before your experts give their opinions. That's why the sliding idea, which we attempted to encapsulate in the term time periods, makes the most sense.  Thank you, counsel. You're welcome. Rex Heinke. Good afternoon. My name is Rex Heinke, and I'm here on behalf of the defendants in Appellee's, the Valak defendants. I'd like to turn to the chronology here, because I think the chronology of what happened here is critical. And I think there's some things that maybe don't come across very clearly unless you understand that. So let me go through this. First, there are two expert declarations that are involved here of Mr. Largent. That's the plaintiff's damages expert. There is a declaration he filed in November of 2003, but there's another declaration which the plaintiffs don't like to talk about, which they filed on June the 3rd, 2004. Now, that's the same time they also filed their witness list. A what? Witness list, Your Honor. Now, why is this all important? Well, when they filed the first Largent declaration, it was in response to a motion we'd made. And that motion was about whether or not we had a duty here under the securities law. And so they filed Mr. Largent as an expert on duty. Then we made a second motion about damages, and we filed that motion on May 21, 2004. At discovery close at that point? Yes. And that was the day the scheduling order said, you will file dispositive motions, and we did it. And what happened two weeks later, on June 3rd? That's when they filed the second declaration for Mr. Largent. That day, June 3rd, is three months after the expert cutoff date. Even under their interpretation of the stipulation. May I ask you a question? Why did you file the motion to stay discovery? Because, Your Honor, we were going to seek a 23-F motion, make a petition here to have the class certification issue reviewed. The trial judge had certified the class at that point. So we were asking him to stay discovery proceedings, really, in the case, until that motion was heard. But that became all moot when he vacated his class certification. But if I may make the point about the second Largent declaration, we got sandbagged. They waited until we filed our damages motion, and then they filed this declaration for Mr. Largent. And it's that declaration that's about damages. That's what it says it's about. If you look at paragraph three of it, it says damages. And there they purport to calculate the individual plaintiff's damages. They didn't engage in full and fair disclosure. They waited until they got our damages motion, and then they told us about their damages expert. And that was three months after, even under their interpretation, that was due. So under the plaintiff's interpretation of the stipulation where it said the time periods would slide? Yes, ma'am. Would you tell us how that would work in terms of the discovery that you think? The only, under our understanding and under the trial court's ruling, the only thing that was moved was the discovery cutoff date, nothing else. Right. Every other thing stayed with us. But you said even taking their interpretation. Right. Taking their interpretation of the time period sliding. Right. When would be the discovery cutoff for revealing expert? That would have been March the 8th, 2004. It would have been 45 days after the expert cutoff date in the scheduling order. So the scheduling order said January 22, 2004. And the expert designation was 45 days after the close of discovery. No, no. I'm sorry. I'm sorry. I'm not making myself clear. January 22 was the due date for their experts under the scheduling order. Under the original scheduling order. Exactly. Okay. Under the stipulation. Let's not leave that. Okay. So when would the expert disclosure have been, when was discovery cutoff under the, it was December 03, right? Right. December, right. And then when would the expert disclosures have been made under the original scheduling order? Theirs were due January, I'm sorry, yeah, January 22. So 45 days after the close of discovery? No, no. Just a specific date. Okay. So how can you slide time periods if you have specific dates? Right. There was only one move. The only one was moved was the discovery cutoff date. No other periods were moved. And all of them were talked about in terms of specific dates and not 45 days later, not, okay. That's what was confusing me. Okay. The scheduling order lays all of this out. The scheduling order had been issued over a year before it had been issued in January of 2003. So all the parties knew what was going on. I gather Arizona practice is quite different from what I'm accustomed to. I don't think we would have known who to depose beyond the obvious suspects without witness lists before depositions ended. But I gather there first you do your depositions and then you say who your witnesses may be? Well, you had the Rule 26 disclosure. Then you had your written discovery and depositions. And then in preparation for the pretrial conference. Let's say everybody just did what they were supposed to do. Yes. And everything was clear in the order and nobody got any extensions of anything. You wouldn't know who the other side's expert witness was until you were not allowed to depose them anymore? No. You would be allowed to depose them after you found out who. Yes. Counsel, could you look at the discovery order, page 83? I think it is. It's confusing to me. When you say discovery order, you mean? The scheduling order. The scheduling order, Your Honor. Certainly. I don't think I'm understanding. That's what confuses me. It says, Close the names of witnesses April 19. 2004. The following year. And the expert's January 22, 2004. But discovery completed December 30, 2003. And discovery on expert's April 19, 2004. That seems backwards. I don't know why it doesn't strike us as backwards, I guess. How do you, if you. The discovery under the scheduling order was supposed to end at the end of 2003. Then there were these other deadlines about disclosure of experts. I see. Finishing your expert discovery. So you're saying it's two rounds. First, you get the disclosure of lay witnesses, and you can do your discovery on lay witnesses. Then you get your disclosure of expert witnesses, and you've got another two months, roughly, to depose the experts? Right. Is that the way it works? Yes, Your Honor. A couple other things. Before we leave this. Okay. So were the lay witnesses, was all the discovery completed on the lay witnesses? As of when, Your Honor? As of the date of the. It was supposed to be completed under the scheduling order at the end of 2003. Right. And that was never changed pursuant to stipulation? That's the one date that was changed. The discovery cutoff is the one date that was moved under the stipulation. All right. Okay. But our point here is that we did not get the disclosure that we were entitled to. They did not give us Mr. Largent's second declaration until three, as I say, three months after they say, they say that the expert disclosure cutoff. Realize, also, they did not, when they found out there was a dispute here, they knew there was this dispute, because we had raised it, and then there was a telephone conversation with the judge, and he said, I mean, deadlines are serious and these are real. That's at the end of February of 2004. When do they disclose their witnesses? They wait until June, June the 3rd, at the same time that they disclose this supplemental declaration about damages. They don't try and remedy the problem. They know that there's a disagreement. Yes. Well, I'm talking about the witness list, too. Let's stick with the experts for a moment. All right. Was there any barrier that could not have been surmounted by a phone call to your arranging a deposition of their expert in the same time period, about a little less than two months, or about two months after they disclosed their expert on damages in June of 2004? Well, sure, we could have called them up and asked for that, but all the discovery deadlines had gone. We had no right to conduct discovery at that point. We would have needed the court's permission. We had already filed our summary judgment motion, so they got the advantage of seeing what our summary judgment motion was. They got to see your hand before they had to come up with theirs. I understand that, but I'm wondering whether you could have extended discovery, whether the trial was coming up too soon or anything like that. We could not have done that without the court's permission, because all the deadlines had been run. And also you have to understand that. When was the trial set? There was not a trial set. No trial setting yet? No, Your Honor. But what there were were a whole lot of other deadlines, like when the limine motions were due, when the pretrial conference order was due, and so on. And all of those things would have had to be kept if we were then going to conduct discovery. When you have a pretrial conference order, this procedure is so different from what I'm familiar with. What I'm familiar with is a trial date that's set in stone, just flat out, nothing happens to it. And then dates are worked back from that in a scheduling order. That's not. And there's some give on those, but not much as you get close to the trial date. That's not how it works there. That's not the way Judge Brown did it, Chief. I can't tell you I'm enough of an expert on Arizona procedure to say how it is always done in Arizona. Well, locality is different. I recall a lawyer once asking for a continuance, and our local judge said, what's a continuance? Your Honor, but in response to your question about the trial date, I do want to make the point that's in Wong, which is there is no requirement for Rule 37 to apply that there be a trial date. There is no case that requires a trial date. In Wong, pretty much the same thing happened as here. It is true there was a trial date in Wong, but the problem in Wong was that the expert was not disclosed, and therefore the defendant, the time in which they were going to make their summary judgment motion, was knocked off. And that's what this Court found was the harm, that the Court loses, the trial Court loses control of the schedule, because the parties hijack it by just not complying with the deadlines and then forcing the trial Court to move all the dates. Did you bring a Rule 37 motion for sanctions in this case? We didn't. I don't know. We brought a motion to strike their experts, because they had not been disclosed. Okay. In the District of Arizona, must you first meet and confer to try to resolve any discovery disputes before you can bring that kind of a motion? I don't believe we were obliged to do that, because it was in response to our summary judgment motion. That is, we move for summary judgment on damages. They filed the second expert declaration. We moved to strike that and the first expert declaration. We never got a report here. We don't have a report to this day. Opposing counsel said they filed a report. I think he misspoke. There is no report. We never got a report. There isn't one ever. Did you get a witness list? Yes. When did you get that? June the 3rd. Of 2004. Yes, ma'am. That was also three months after even under their interpretation of the stipulation. Let me ask you, counsel, about Rule 37 sanctions. Counsel, when they're going to have sanctions placed against them, 37 have a right to show that they are substantially justified or is harmless. I didn't find anything where that was argued, but counsel says in a motion for reconsideration it was brought up. Your Honor, I don't believe that's what the motion said. It said, Your Honor, Judge Browning, you're wrong. On the dates. On the dates. And I suppose, you know, maybe under one interpretation of the term substantial justification, their interpretation, maybe that's what they mean when they're saying substantial justification. Well, I could be wrong and they can certainly correct me, but I thought all the way through this that the argument stayed where it was of disagreement on interpretation. Let me ask one other question. I asked counsel whether or not Yeti doesn't apply to this case, and he said no and gave his reasons for it. I'd like to have your response to Yeti, which has its similarities to the case here where a defense or whether a damage expert was, was, and it essentially ended the case. Right. And the two cases we rely on are Yeti and Wong. We say they are the controlling cases. Those are the cases we believe that controls the outcome here. And Yeti, opposing counsel, claims here and claimed in their brief that there has to be a showing of bad faith, willfulness or something like that. Yeah. There are two things I would say in response to that. First, Yeti squarely says that's not true. And second, we believe that's what went on here, because there is no justification, zero, none, when it comes to what they did with the second expert declaration, even under their interpretation. I thought Yeti, I thought just Yeti just told us what a district judge can do in a 37 situation if there hasn't been shown that it's harmless or substantially justified. Right. But I think Yeti responds to a couple things. One is opposing counsel says you have to show bad faith. I think there is bad faith. But? But I don't think Yeti requires it. I think Yeti squarely says that unless you impose a sanction that is terminating in and of itself that terminates the case, you don't have to show bad faith. Well, we'd have difficulty if we went off on your argument of bad faith, because there's been no findings of bad faith. And that's always a problem for us in appellate court. But if I understand your argument of what is before us, you don't think that the requirements of Yeti are as stated by counsel. Right. And if you were going to look at Yeti for language, I'm sure you could find it for me. Yes, Your Honor. I would turn to page 1106. And there, Your Honor, what this Court did was engaged in an analysis of the history of Rule 37. And it pointed out that Rule 37 was amended in 1933 or 33, sorry, 1990. You're letting your voice drop. I'm sorry, Your Honor. It was amended in 1993. And it was amended to make Rule 37 mandatory and self-executing unless one of the two exceptions, substantial justification or harmlessness, were demonstrated. And those, Yeti indicates, need to be demonstrated by the party who's trying to get out from under Rule 37. And they never came close to meeting that burden. Yeti also goes on to say, yes, this can be a harsh sanction. Yes, you can have your, ultimately it may cost you your whole case. But that was the very point of the amendments, which was to compel people to disclose your orders and make the disclosures. And the sanction here is proportionate to the offense. The offense is failing to disclose. If you fail to disclose them, you can't use them. And that's all that happened here. Under Yeti, we said that the only justification proper for the defendant was that they were under the mistaken belief. And it strikes me that no one was talking about anything further than that. At any rate, that's your interpretation of Yeti. Yes, Your Honor. So that you don't need bad faith. It's meant to be self-executing. And it's meant to be harsh if you don't comply with the rules. And they did worse here than not comply with the rules. They did try to save it. Yeti said that it's going to have teeth. It's got to have teeth. And the Rule 37, it has a way out. If you can show it's substantially justified or show it's harmless, you can get home free. Sure. But that hasn't been shown here. That's our point. There's nothing that demonstrates either of those things. Let's theorize just for the moment. Hypothetically, suppose that their claimed misunderstanding is a sufficient showing of justification. Now we look at harmlessness. The usual sort of thing is disruption of the schedule of the court. You've got a trial and you lose your trial date. You can't go forward with the trial. That doesn't apply here because there's no trial date. Correct. The other harmlessness I can think of is what the plaintiff argues, well, they already knew about this guy. But your response to that is we didn't know he was a damages expert. We just thought he was a duty expert. And we didn't know what he was going to say? What is the harm, though, in let's say you did have to show your hand before they showed their hand. If nobody, why did that matter in this case? Well, Your Honor, I think it always matters in any case. As the defendant, I'd always want the plaintiff to show me what their expert is and what he or she is going to say so I can get my expert to rebut that. We didn't get that here. We stayed with the order. The original scheduling order. And, therefore, we'd already disclosed our expert before they did this. And we never got a report. The rules require them to provide a report that sets forth all opinions. What do they say is their report? A declaration they filed in November. Well, that obviously, A, isn't a report. And, B, was wholly incomplete because they then came along with a second declaration. If they thought that first declaration was adequate, why did they come up with a second one? And the answer is, if you read the second one, that's the one that's about damages. The first one isn't. Different motion. One's about duty, one's damages. I'm sorry? Different motion. One's about duty, one's damages. Right. But the point is, we get it three months later. That's not the way the rules are supposed to work. And the harm to the system, whether or not it knocks off a trial date, is it knocked off all these other dates that were in the scheduling order. If the judge was going to say, okay, I'm going to stop everything, I'm going to let you go do some more discovery, then you can go get your exit. Well, as I understand it, there's nothing for the judge to stop. Nothing happens in court. There's no trial date setting. There's nothing happening in the district court except what the attorneys put before it. No, no. There were dates in the scheduling order that we have the compliance with. That's why we filed them under damages. Yeah, but that's private. I'm sorry? That's private. When a scheduling order says finish your depositions by December 3, nothing happens in the courtroom. The parties just do their depositions and get them done by December 3. Right. But I'm talking about the scheduling order said we had to file our summary judgment motion on a particular date. And then it had other dates, like the date of the pretrial order, the in limine motions and so on, that were tied into the dispositive motion cutoff. So that these all followed from that. Do you usually get a trial there shortly after the dates for your in limine motions and your pretrial conference? Your Honor, I cannot honestly answer that. I do not know. You're not an Arizona lawyer? I'm not an Arizona practitioner, so I'd be misrepresenting you. Okay. Thank you, counsel. Thank you. Your Honor, I would request to be heard for a minute. I think you've used up your time, but go ahead and take a minute. I appreciate that. This is complicated, Your Honors, and I appreciate your attention. I have three points. Number one, whether the defendant was truly on notice of what our expert, Mr. Largent, was going to say as early as November 2003, because defense counsel says, no, that's not true. In the record is Mr. Largent's report, starting at page 110 of the excerpts of record. And you will see, if you read it, that it talks both about damages and about causation and about duty. Why don't you follow another one, then? The June 2004 declaration applied those principles to the specific information of the named plaintiffs. And that was because that was at issue on a motion at the time. But this is a class case, and the opinions of Mr. Largent about duty and about causation and about damages were offered for the class, and it's all in November 2003. What was that date again of the report? November? His report, 11-19-03. And it starts at page 110 of the excerpts of record. Number two, Your Honor. Judge Kleinfeld, you're correct that the idea behind the pretrial proceedings in Arizona is there's fact discovery and then a second round of expert discovery. And that makes sense because your experts ought to know what the fact witnesses say. That is why, Your Honor, we interpreted the extension of the scheduling order to shift all the dates 45 days into the future so that the experts would stay after the conclusion of fact discovery. It just makes sense. The interpretation that the defendants insisted on, keeping the expert date on the calendar where it was, meant that we would have had to disclose our experts and put in our reports before fact discovery had concluded. Now, we could have done that. As I said, we had our report done in November, but I'm offering it instead for the proposition that our interpretation of the order, the extension order, at least was reasonable. It may not have been right, but it was at least reasonable. So are you equating this declaration to a report? This is what you're saying was the report of the experts? For purposes of whether there was any harm to the defendants, everything is in there. I'm asking you. When we submitted our report. Can I finish my question? I'm sorry, of course. I apologize. Did you file a report of an expert with the court? Here's what we filed. On March 8th, we filed a designation of the experts, and we said his report is going to be what's in his affidavit back in November. So my question is, are you saying that this declaration, that's at page 110 of the record, was a report? It was for those purposes, yes. So when you file a report with the court, you call it a declaration? Well, Your Honor, what happened then is that the expert. Yes or no, when you filed a declaration, when you file a report, do you call it a report or do you call it a declaration? Probably the title on it would have been report, but it would have had the same content. Okay. You had a third point you wanted to make. Yes. In response to you, Judge Wallace, and your questions about what happened with Judge Browning at the end of this process in August, you asked about whether we had asked Judge Browning to issue findings. And I've looked in the excerpts of record, and the motion itself, ironically, was excluded. But if you look at pages 421 and 428 of the excerpts of record, 421 is one of our attorney affidavits asking Judge Browning to reconsider. 421 of the excerpt? Yes. It's near the end of volume two. 421 is this number up here? 421 of volume two of the appendix of the excerpts of record? That's what I've got. Go ahead. That is one of the submissions we made to Judge Browning, asking him to change his mind and telling him why he should not have leveled the case-ending sanction that he did. And then if you look at 427 and 428, it is Judge Browning's two-page order denying the motion for reconsideration. And the motion for reconsideration is not in the excerpt. Unfortunately, it's not, Your Honor. But I do think that it's clear that we asked him very strongly and told him why we thought he was wrong.  Dermic versus variable annuity is submitted. We'll take a five-minute recess. We'll take a five-minute recess.
judges: Wallace, Kleinfeld, Rawlinson